## 22265

A. T. CONNER, Appellant, v. J. C. ALVAREZ, III, and Billie Jean Alvarez, Respondents.

(328 S. E. (2d) 334)

Supreme Court

*Mitchell K. Byrd, Byrd & Byrd,* Rock Hill, *for appellant.*

*Thomas B. Roper,* Rock Hill, *for respondents.*

Heard Feb. 20, 1985.

Decided March 25, 1985.

CHANDLER, Justice:

This appeal involves the construction of a lease-option agreement (agreement) entered into by Appellant Conner (Conner) and Respondent Alvarez (Alvarez). From an order of Circuit Court Judge Wade S. Weatherford, Conner appeals.

We affirm as modified and remand.

On January 7, 1977, Alvarez leased to Conner a house in consideration of a cash payment of $500.00 and monthly rental payments of $275.00. The agreement, prepared by the secretary of Alvarez's attorney, contained an option for purchase of the house on the following terms:

1. This lease agreement with option to buy shall exist for a period of one year from date, at a monthly rate of Two Hundred Seventy-five and no/100 ($275.00) Dollars per month, payable to the Lessor one month in advance and due on or before the tenth day of each month thereafter. 2. All monthly payments, along with the $500.00 hereinabove mentioned, shall be applied toward the purchase price of the house, based on the 1977 appraised value of the house, same being the sum of Thirty-Nine Thousand and no/100 ($39,000.00) Dollars, should the Lessee decide to exercise the option to buy said house during the year 1977. *This agreement and option to buy shall be renewable*

*at the end of this year, and all subsequent years,* unless the parties should agree otherwise. *However,* the house shall be re-appraised at the time the Lessee should decide to exercise his option to buy, and the Lessor shall offer the house to the Lessee for the appraised fair market value of the house at that time. [Emphasis supplied.]

At the time of the hearing before this Court Conner was, under renewals, still in possession of the house at the stated monthly rental.

The parties agree that if the option were exercised during the year 1977, the purchase price would be $39,000.00 less all monthly payments and the $500.00. They disagree on computation of the purchase price upon exercise of the option in years subsequent to 1977.

Conner contends that, upon his exercise of the option in any year subsequent to 1977, the $500.00 payment and all monthly rentals paid should be applied to the re-appraised value of the house. We agree. He contends further that he is entitled to an evidentiary hearing to determine damages consequent to Alvarez's breach of the agreement. We disagree.

Alvarez contends that, upon Conner's exercise of the option subsequent to the year 1977, the purchase price is the reappraised value of the residence with no credits applied. We disagree.

While numerous questions are raised in the briefs, two issues are presented for determination: (1) What monthly rental payments, if any, will be deducted from the re-appraised value of the house when the option to purchase is exercised in a year subsequent to 1977; and, (2) whether Conner is entitled to a hearing to determine consequential damages.

## I. CREDITS TO BE DEDUCTED FROM RE-APPRAISED VALUE OF HOUSE

Two attempts were made by Conner to exercise his option to purchase. The first, in September, 1977, was resisted by Alvarez who contended, erroneously, that the agreement required payment of interest by Conner. The record is unclear, however, that Conner was prepared to follow through his intent to exercise, and we find this first attempt inconclusive and not a valid exercise.

The second attempt began with a letter of December 11, 1978, in which Conner advised Alvarez of his renewal of the lease and stated further, "also I am in the process of making a determination and evaluation as to my purchase of the house some time in the spring."

Conner's December 11 letter was followed by one of his then Attorney, Carrol M. Pitts, Jr., on February 2, 1979, which included the following:

> ... Mr. Ted Conner brought by to me a copy of the Lease Agreement with Option to Buy that he entered into with you on January 7, 1977. Pursuant to the terms of that agreement, Mr. Conner hereby gives notice of intention to exercise the option to purchase. It is my understanding that the sum of $7,375.00 has been paid towards the purchase price which is to be determined through appraisal.
> ... We would like to conclude this matter at the earliest possible date.

The trial judge found, and we agree, that the Pitts letter establishes the time of exercise of the option as February 2, 1979. The letter also reflects (1) Conner's position that monthly payments from January 7, 1977 through February 2, 1979, would be applied to the re-appraised value of the house, and (2) Conner's desire to proceed promptly with closing the transaction.

Alvarez refused to comply with Conner's exercise of the option on February 2, 1979, on the ground that no monthly rental payments should be deducted from the reappraised value of the house. His refusal constituted a breach of the agreement.

In February 1979, Alvarez filed an ejectment action in magistrate's court. On October 9, 1979, some eight months later, a trial was had and Conner ordered evicted. Conner appealed and on July 28, 1980, nine months after the trial, the circuit court reversed.

One year later, July 22, 1981, the same magistrate conducted a second eviction hearing, resulting in judgment for Conner.

Meanwhile, On March 21, 1980, and during the pendency of his appeal of the magistrate court's eviction order, Conner

filed his complaint seeking specific performance of the agreement and ancillary damages. Sixteen months thereafter, July 30, 1981, he filed an amended complaint which was responded to by Alvarez's answer and counterclaim thirteen months later, August 17, 1982.

On November 17, 1982, Judge Weatherford conducted a hearing on summary judgment motions filed by both parties. On November 24, 1982, he issued his order in which he held (1) that Conner legally exercised his option to purchase on February 2, 1979; (2) that the purchase price of the house would be its re-appraised value as of February 2, 1979, less the $500.00 and monthly rental payments made during the year 1977; and (3) that Conner was not entitled to an evidentiary hearing for damages.

We reverse that portion of the trial judge's order which disallowed credit for monthly rental payments except those made in 1977 and, otherwise, affirm. We hold that Conner is entitled to credit for all monthly rental payments made.

The law in this state regarding the construction and interpretation of contracts is well settled. When it is perfectly plain and capable of legal construction, the language itself determines the full force and effect of the document. *Gilstrap v. Culpepper,* S. C., 320 S. E. (2d) 445 (1984); *Superior Auto Co. v. Maners,* 261 S. C. 257, 199 S. E. (2d) 719 (1973).

> Courts are without authority to alter a contract by construction or to make a new contract for the parties. Their duty is limited to the interpretation of the contract made by the parties themselves . . . 'regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully.'

*Gilstrap, supra,* p. 447; *Blakely v. Rabon,* 266 S. C. 68, 73, 221 S. E. (2d) 767 (1976); *McPherson v. J. E. Sirrine & Co., et al,* 206 S. C. 183, 33 S. E. (2d) 501 (1945).

Applying these principles to the agreement here we hold that, upon his exercise of the option on February 2, 1979, Conner was entitled to purchase the house at its appraised value as of that date, less the $500.00 and all monthly payments made to such time as Alvarez delivered a warranty deed.

Alvarez's contention that the agreement fails to provide for application of monthly rental payments to the re-appraised value of the house upon exercise of the option in years subsequent to 1977 is without merit.

From its plain language the agreement provides that all terms and conditions of the agreement applicable to a 1977 exercise of the option to purchase remain applicable in subsequent years with the sole exception of the value of the house which was to be re-appraised at the time of exercise of the option in any year subsequent to 1977.

The language, "[t]his agreement *and* option to buy" [emphasis supplied], can mean only that Conner is entitled to both the right to purchase the house and to the terms of the agreement, which provides for deduction of monthly rental payments from the purchase price. The following sentence containing the special provision for re-appraisal of the house begins with the word, "However," indicating the retention of all other provisions of the agreement. The option to buy and agreement are inseverable.

Although Alvarez had the document prepared, he demonstrated a marked ignorance of its terms, or an unwillingness to abide by them. Conner's first attempt to exercise the option in September 1977, which we hold was inconclusive, was aborted in large measure by Alvarez's insistence that Conner pay interest, notwithstanding the agreement contains no reference whatever to payment of interest. Alvarez testified repeatedly to his mistaken claim for interest:

> Q. I would ask you to recall the events of sometime in September, 1977 when Mr. Conner came to your house to make a monthly house payment, if you would relate what happened, I believe it was evening?
> A. Are you referring to
> Q. When he exercised the option?
> A. When he attempted to exercise his option?
> Q. Whatever?
> A. Okay ... [H]e told me at that time he would like to exercise his option to purchase the house. And I told him fine. He said that does all this money that I have paid toward in renting the house, will it be applied toward the purchase price, subtract it from the $39,000.00 I think was the appraised value of the

house. I said it'll be applied toward the house *but it will have, interest will have to be taken out* and I told him at that time I showed him in my mortgage payment book. I said all of the money that you've paid toward the principle will go toward the purchase price of the house but I'm having to pay interest which would be applied toward the house from you and I told him I'd be glad to sell him the house. But he at that time *when I told him that there would have to be interest deducted* he said he was afraid of that and that was the last I heard of it.

\* \* \*

Q. Did you get the impression from him that he wanted to purchase for $39,000.00 the price stated in the lease less any payments he had already made to you?

A. Yes.

Q. And your testimony was that you refused to go along with that plan?

A. Well *I thought it was in agreement with him that he would have to pay some interest.*

\* \* \*

A. Right, *I had that drawn up, my lawyer's secretary, it wasn't a lawyer, I thought at that time that they did write in there that they would be interest paid toward purchase of the house.*

Q. You thought they did but they didn't?

A. That's right.

Q. *And so even though they didn't write it in here you still wanted Mr. Conner to pay the interest?*

A. *That's right.* [Emphasis supplied.]

If Alvarez intended that Conner pay interest, it was his responsibility to include the requirement in the written instrument. Moreover, in this instance Alvarez underscored his peril by selecting an attorney's *secretary*, and not an attorney, to prepare the agreement.

It is clear from the record that Alvarez, in time, came to regard the agreement as unfavorable and one whose terms he did not intend to comply with. At the July 22, 1981, eviction trial before the same magistrate who had conducted the earlier trial of October 9, 1979, his own attorney provided a

remarkable and candid admission of Alvarez's problem with the agreement:

> BY COURT: Mr. Alvarez, this case has been in Magistrate's Court, Circuit Court, and before some learned Judges, who I respect very much, and to come back here at this time in the Magistrate's Court, I want you to repeat something for me. *Just exactly why do you want to evict him?*
>
>        \*    \*    \*
>
> BY MR. ROPER: Let me interrupt to say one thing. This is basically why he is seeking eviction. This Agreement and Option to Buy shall be renewable at the end of this year and also for years unless the parties should agree otherwise. Then interpreted to mean that this rental payment which is from 1977 continued unless they agree otherwise. *That even though it was drawn by someone representing Mr. Alvarez, it was a slipshod agreement* and that is basically why we are trying to get out from under it because *it is a possibility that he is bound ad infinitum at $275.00 a month rent* and you know a house that leased for $275.00 four years ago would not lease for that today. *That is basically the reason we are trying to get the ejectment.* [Emphasis supplied.]

One is not entitled to judicial relief from the terms of a "slipshod agreement" of his own making "regardless of its wisdom or folly, apparent unreasonableness or failure to guard [his] rights carefully." *Gilstrap, supra.*

### II. EVIDENTIARY HEARING ON DAMAGES

Conner's action for specific performance lies in equity, and his entitlement to a hearing for consequential damages must be determined on principles of equity. On February 2, 1979, the date he exercised his option to purchase, Conner had paid monthly rentals of slightly more than $7,000.00. Had Alvarez performed as required by the agreement, that amount plus the $500.00 payment would have been deducted from the value of the house, re-appraised as of February 2, 1979, the transaction would have been completed and the matter ended.

Alvarez's failure to perform, breaching the agreement, has brought about an unusual, if not bizarre, result.

Through lease renewals by the parties, Conner has made over 70 monthly rental payments totalling over $19,000.00 between the time of Alvarez's breach on February 2, 1979, and the hearing before this Court on February 20, 1985.

Conner contends that Alvarez's breach of the agreement denied to him mortgage financing at rates prevailing on February 2, 1979, and that he is entitled to make a showing of the rise in interest rates since that date as evidence of damages resulting from the breach. We disagree.

It would be grossly unfair and manifestly violative of law and equity to permit Alvarez to breach the agreement and then deny to Conner credit for payments made by him and accepted by Alvarez subsequent to the breach.

On the other hand, it is the well settled law of this state that "[i]n applying the doctrines of equity, the equities of both sides are to be considered, and each case must be decided on its own particular facts." *Carroll v. Page*, 264 S. C. 345, 349, 215 S. E. (2d) 203 (1975), citing 30 C.J.S. Equity § 89, p. 976; *Associated Spring Corporation v. Wilson & AVNET*, 410 F. Supp. 967, 977 (1976).

We find that awarding credit to Conner for all monthly rental payments made subsequent to Alvarez's breach disposes of his claim for damages, and is an equitable resolution of the dilemma in which the parties are now cast by this extended litgation.

## CONCLUSION

The record in this case reflects a course of long and protracted litigation and lengthy, unexplained time periods for the joining of issues and conduct of timely hearings, all to the detriment of both parties. As the trial judge noted in his order of November 24, 1982, "It is the Court's belief that this case should be ended. . . ." We agree.

We hold that Conner legally exercised his option to purchase on February 2, 1979; that Alvarez's refusal to comply constituted a breach of the agreement; that Conner is entitled to purchase the house at its re-appraised value as of February

2, 1979, less $500.00 and the amount of all monthly payments made from January 7, 1977, until delivery by Alvarez of a warranty deed.

The case is remanded to the Circuit Court for appropriate action in accordance with this opinion.

Affirmed as modified and remanded.

LITTLEJOHN, C. J. and NESS, GREGORY and HARWELL, JJ., concur.