1522

Cheuk Wai CHAN, Kam Lau Chan, Lisa Floral Import and Export Co., Inc., Fabrica De Flores Artificiais, Inc., Tai Fung Trading Co. of S.C., Inc., and United Trading Co., Inc., Defendants, of whom Cheuk Wai Chan, Lisa Floral Import and Export Co., Inc., Fabrica De Flores Artificiais, Inc., Tai Fung Trading Co., of S.C., Inc. and United Trading Co., are Appellants v. William T. THOMPSON, Janette S. Thompson and Frances Stewart, Respondents.

(395 S.E. (2d) 731)

Court of Appeals

Affirmed as modified and remanded.

*J.D. Todd, Jr.*, and *Jack H. Tedards, Jr., Leatherwood, Walker, Todd & Mann, Daniel N. Ballard*, and *Jack L. Bloom*, Greenville, *for appellants.*

*Ray D. Lathan, Lathan & Barbare*, Greenville, *for respondents.*

Heard May 5, 1990.

Decided July 2, 1990.

CURETON, Judge:

This case involves primarily a claim of breach of contract. The case was referred to the master with finality and direct appeal to the Supreme Court. The master concluded William and Janette Thompson were entitled to a judgment of $835,800 on their counterclaim for breach of contract. The plaintiffs appeal.

The Thompsons were involved for a number of years in the business of importing and selling artificial flowers. In the course of their business they met Cheuk Wai Chan, a Chinese citizen. Mr. Chan manufactured silk flowers and bushes. The Thompsons purchased inventory from Chan for several years. In 1985, Mr. Thompson and Mr. Chan signed an agreement designated a "factory warehouse distribution arrangement." The twenty-four page agreement was primarily drafted by Thompson. It was executed in Macau, a Portuguese territory near China, with Mr. Chan utilizing a translator since he does not speak English. Subsequently, Thompson and Chan executed two other documents in 1985. One was a two page "General Agreement" executed July 8 and the other was a lease executed July 9. Mr. Thompson was the author of the two page agreement and the lease was apparently prepared by an attorney.

It is difficult to generalize about the business arrangement between Thompson and Chan. The parties disagree about its

fundamental concept. Chan leased space from Thompson in Thompson's warehouse in Greenville and incorporated a business called Lisa Floral Import and Export Company, Inc. Thompson claims the agreements made him the general sales agent for Lisa Floral and he was to receive a ten percent commission on all gross sales by Lisa with a guaranteed minimum commission of $200,000 per year. In return, Thompson was to promote the Lisa product line and utilize his existing customer base to help Chan establish a market in the United States. On the other hand, Chan asserts the agreements do not provide for either a minimum commission or an exclusive sales agent relationship. Rather, he maintains Thompson was to be compensated only upon sales of the Lisa product line which Thompson generated. Chan claimed Thompson was paid all commissions due. Thompson claimed he was not paid and was owed at least the minimum yearly commission. The disagreement led to Thompson locking Chan out of the warehouse and seizing Chan's records and the Lisa inventory on the site.

Chan sued the Thompsons claiming they breached the lease and unlawfully seized the Lisa inventory. The Thompsons counterclaimed for breach of contract. At the initial hearing the Thompsons were not represented by counsel and their business, Thompson's Floral Import Company, Inc., was in bankruptcy. A second merits hearing was subsequently held. Additional parties were added to the case by the master. Kam Lau Chan, the wife of Cheuk Wai Chan, was added as a party due to her partial ownership of Lisa Floral. She was also present in South Carolina during most of the time period in issue. Three other businesses owned by the Chans were also added as parties. These businesses were apparently added because of claims the Chans utilized them to funnel sales away from Lisa Floral and thereby deny commissions to Thompson. Frances Stewart was added as a party because she was holding the disputed Lisa inventory as a secured creditor of Thompson's Floral Import Company, Inc.

The master found the agreements obligated Chan to pay Thompson a commission of ten percent of gross sales of Lisa Floral or a minimum commission on forty import containers per year. The inventory per container had an average resale value of $59,700. The master concluded Chan breached the

contract by not paying the guaranteed commission during the past three and one-half years. Therefore, the master awarded the Thompsons $835,800 in commissions.

Chan argues the master erred as a matter of law in construing the contracts. He asserts there is no provision for a guaranteed minimum commission. Additionally, he argues the Thompsons failed to prove their claim for breach of contract because they failed to prove damages on actual commissions.

When a contract is perfectly plain and capable of legal construction the language of the contract determines the full force and effect of the document. *Conner v. Alvarez*, 285 S.C. 97, 328 S.E. (2d) 334 (1985). The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties. *Rentco., a Division of Fruehauf Corp. v. Tamway Corp.*, 283 S.C. 265, 321 S.E. (2d) 199 (Ct. App. 1984). Ambiguity in a contract must be construed against the party who prepared it. *Duke Power Co. v. S.C. Public Serv. Comm'n.*, 284 S.C. 81, 326 S.E. (2d) 395 (1985). The rights of the parties must be measured by the contract which the parties themselves made, regardless of its wisdom, reasonableness, or failure of the parties to guard their rights carefully. *Conner v. Alvarez, supra; Gilstrap v. Culpepper*, 283 S.C. 83, 320 S.E. (2d) 445 (1984).

The two contracts are the twenty-four page Macau agreement and the two-page General Agreement. Apparently, both of these contracts were prepared by Mr. Thompson. Certain additions were made after the contracts were translated for Mr. Chan. Thompson relies upon language in the General Agreement which states "Lisa agrees with Thompson to be sales agent for all goods" and "Lisa agrees to pay commission of 10% to Thompson for this service." The document also states Lisa will ship to the United States at least forty containers of inventory per year. The earlier Macau agreement is silent on the ten percent commission although it does contain a provision which allows Thompson to purchase from Lisa Floral at a ten percent discount.

We do not find a statement of intent in the agreements that Thompson will be guaranteed a minimum commission of ten percent for sales of forty containers per year. The General Agreement provides the forty containers will be shipped upon Thompson's order; however, there is no

provision indicating the commission will be paid regardless of whether the goods are sold. Under Thompson's theory he would apparently claim a commission if the goods were shipped but remained unsold in part or in total. Since Thompson was the author of the documents any ambiguity must be construed against him. *Duke Power*, 284 S.C. 81, 326 S.E. (2d) 395.

In reviewing the record, however, there is evidence to support the master's finding of apparent efforts by the Chans to avoid payment of commissions to the Thompsons on sales generated by them and to "cheat [Thompson] out of commissions."[1] Thompson testified his employees introduced customers to the Chans and the Lisa Floral product line. Thompson Floral employees would show the Lisa products at trade shows and take orders. Since Lisa Floral was located in the same building as Thompson Floral, customers would be taken to the Lisa showroom and could order from Lisa stock. Former employees of Lisa Floral testified they were instructed to tell customers brought in by Thompson Floral that they were out of stock of an item. Subsequently, they would contact the customer and take the order directly. There was some evidence of two separate price lists utilized by the Chans and Lisa Floral when dealing with Thompson customers. Also, the Chans apparently set up several companies to engage in the same business without the knowledge of the Thompsons. The master found these actions were evidence of breach of contract by Chan.

The master found no evidence was offered to reveal how large the Lisa Floral sales were to Thompson customers. He concluded the information was available to the Chans but they would not reveal it. Apparently, the master shifted the burden of proof to the Chans. This was error. The Thompsons brought the claim for breach of contract. They had the burden of proving damages. *Jackson v. Midlands Human Resources Center*, 296 S.C. 526, 374 S.E. (2d) 505 (Ct. App. 1988). They retained counsel the day before the hearing. No discovery was pursued. They argue discovery would have been fruitless because the sales documents were in a foreign country. However, the Chans were subject to the

---

[1] The Thompsons did not sue Chan for fraud.

jurisdiction of the court and the South Carolina Rules of Civil Procedure provides a discovery framework to aid parties in the preparation of their case.

The Thompsons did introduce some evidence of damages through invoices and bank deposit slips of Lisa Floral and the other companies owned by the Chans. According to the master's finding, these documents indicated sales of $1,344,376.29 from August 1985 through October 1987. This computation is the only evidence of damages presented by the Thompsons absent their reliance on the guaranteed commission. Since we have determined the contractual agreements did not provide for a guaranteed commission we affirm the decision of the master as modified and remand for entry of judgment for the Thompsons in the amount of $134,437.62 (i.e. 10% of $1,344,376.29).

We affirm the decision of the master to add the other companies owned by the Chans to the litigation on the breach of contract claim. There is some evidence these companies were set up by the Chans and utilized to channel sales away from Lisa Floral in such a way as to deprive the Thompsons of sales commissions. Permissive joinder of these companies was proper. Rule 20, SCRCP.

The master concluded Frances Stewart as a creditor of Thompson Floral was entitled to receive a substantial portion of the judgment with the remainder to go to the Thompsons. The record indicates Ms. Stewart was holding certain Lisa Floral inventory pursuant to an agreement of the parties during the pendency of the litigation. The order and record are not clear as to the court's disposition of the matter. There is no evidence in the record to apprise this court of the relative merits of the claims of the parties to the inventory. We, therefore, remand this issue to the master and direct the parties to present evidence on this issue so that it may be resolved.

We also remand to the master the issue of the return of records and personal property of Chan. As with the issue of the inventory, it is not clear to us the court disposed of this matter and it is an issue which may be resolved on remand.

We also have determined any conclusion or statement by the court regarding future damages and further litigation between the parties was erroneous. We have found no merit to

Thompson's claim for a minimum annual commission. Therefore, it was error for the court to conclude as a matter of law that the Thompsons would be entitled to future commissions in any subsequent litigation based upon the minimum commission.

Affirmed in part, affirmed as modified in part, reversed in part and remanded.

SANDERS, C.J., and GARDNER, J., concur.

## ORDER ON PETITION FOR REHEARING

After carefully considering the parties petitions for rehearing, we find it necessary to address certain points. Our Opinion No. 1522, filed July 2,1990 is modified in accordance with our disposition of points raised in the petitions.

### I.

We found no error by the trial court in the addition of (1) Tai Fung Trading Co. of S.C., Inc., (2) United Trading Co., Inc., and (3) Fabrica De Flores Artificiais, Inc., as parties to this case. The addition of these companies as parties provided the opportunity to the Thompsons to prove their claim. However, our prior opinion did not clearly dispose of the issue of whether a judgment could be rendered against the companies. Upon review, we conclude no judgment may be rendered against them. The Thompsons sued for breach of contract. No motion was made to amend the pleadings during trial to assert any other cause of action. The companies were not parties to the contracts relied upon by the Thompsons. Since they were not parties to the contracts a judgment for breach of contract cannot be rendered against them.

### II.

Our opinion held the Thompsons were not entitled to a minimum commission based upon forty containers per year. However, the master alternatively concluded the agreements provided for a commission of ten percent of gross sales. There is evidence to support this finding based upon the language in the July 8th agreement. The master found evidence of sales totaling $1,344,376.29. We affirmed the judg-

ment of the master as modified to reflect a commission based upon this sales figure.

Chan has asserted the computation of the master is in error. We have reviewed the record and conclude the amounts constituting (1) deposits to Mrs. Chan's bank account, and (2) the gross income of Fabrica should not be included in the computation. The record does not support a finding that Fabrica made retail sales on which commissions would be due. The record also does not support a conclusion the deposits to Mrs. Chan's account were related to sales of artificial flowers. Accordingly, we modify our opinion to reflect a gross sales figure of $556,038.59. The decision of the master is affirmed as modified and remanded for entry of judgment for the Thompsons in the amount of $55,603.85 (i.e. 10% of $556,038.59).

### III.

We remanded the issue of the inventory held by Frances Stewart to the master because it was not clear to us from the record that the master had disposed of the matter. Chan has called our attention to a supplemental order of the master which found the inventory held by Stewart belonged to Chan. This finding was not appealed and is the law of the case. We modify our prior opinion to reflect this unappealed finding and remand this issue to the master for the purpose of ascertaining how these goods should be disposed of in light of the judgment and the claims of Stewart to any amount recovered by the Thompsons.

### IV.

The Thompsons seek prejudgment interest and an additional sum as a commission in their petition for rehearing. The Thompsons neither sought nor were awarded prejudgment interest in the lower court. They may not now raise this issue. Similarly, we deny the request for an additional commission as the Thompsons did not assert this position before the master.

In conclusion, we deny the petitions for rehearing but modify our prior opinion to reflect the disposition of the matters raised in them. The decision of the master is affirmed as modified and remanded for entry of judgment for the Thompsons

in the amount of $55,603.85 against Cheuk Wai Chan and Lisa Floral Import and Export Co., Inc.