1758

UNITED DOMINION REALTY TRUST, INC., Respondent-Appellant v. WAL-MART STORES, INC., Appellant-Respondent.

(413 S.E. (2d) 866)

Court of Appeals

*Dana C. Mitchell, III* of *Mitchell, Bouton, Yokel & Edwards,* Greenville, and *Frank H. DuRant,* Myrtle Beach, *for appellant-respondent.*

*Linda Weeks Gwin* of *Thompson, Henry, Gwin, Brittain & Stevens,* Conway, *Benjamin C. Ackerly* and *Tyler P. Brown* of *Hunton & Williams,* Richmond, Va., *for respondent-appellant.*

Heard Dec. 3, 1991; Decided Jan. 13, 1992.

Reh. Den. Feb. 7, 1992.

GOOLSBY, Judge:

United Dominion Realty Trust, Inc., brought this action against Wal-Mart Stores, Inc., seeking to have Wal-Mart ejected from space leased by Wal-Mart in a shopping center owned by United Dominion. The magistrate directed a verdict in United Dominion's favor. Wal-Mart appealed to the circuit court and posted the $100,000 appeal bond set by the magistrate. The circuit court affirmed. It also denied a second motion by United Dominion to increase Wal-Mart's bond. Both parties appeal. We affirm.

Jack Shaw once owned the Village Square Shopping Center

in Myrtle Beach. In 1978, Shaw leased 50,000 square feet of space in the shopping center to Kuhn's Big K Store. The lease was twice modified. The second modification came in 1981 when Wal-Mart assumed Big K's lease and after Big K became a wholly-owned subsidiary of Wal-Mart. Wal-Mart subsequently converted Big K into a Wal-Mart store.

Several years later, Shaw sold the shopping center to United Dominion. Not long afterward, Wal-Mart relocated its store some distance away and began using the space it leased in Village Square, as Wal-Mart's store manager conceded, "as a warehouse or for storage." United Dominion thereafter commenced this action to eject Wal-Mart from its space in the shopping center.

United Dominion bottomed its action on Wal-Mart's alleged breach of paragraph 26 of the lease agreement. This paragraph provides:

> [Wal-Mart] shall operate its business in the demised premises, with due diligence and efficiency in an effort to produce all of the gross sales which may be produced by such manner of operation, unless prevented from doing so by causes beyond [Wal-Mart's] control. [Wal-Mart] shall conduct its business in the leased premises during the customary days and hours for such type of business in the city or trade area in which the demised premises are located.

Other pertinent provisions include paragraphs 1 and 4. Paragraph 1, reads in part:

> [United Dominion], in consideration of the rents hereinafter . . . agreed to be paid . . . lease[s] unto [Wal-Mart] the . . . premises [hereafter described] . . . for a term [of] twenty-five (25) calendar years. . . . It is understood and agreed that the [d]emised [p]remises being leased will be used by [Wal-Mart] in the operation of a discount department store, but [United] agrees the store may be used for any lawful purpose.

Paragraph 4 reads in part:

> [Wal-Mart] . . . agrees to pay as rent for the use of [the] premises. . . .
> The sum of Thirteen Thousand Five Hundred Forty-

one and 67/100 Dollars ($13,541.67) per month. . . .

In addition to the minimum or guaranteed rental . . ., [Wal-Mart] agrees to pay to [United] as additional rent an amount equal to two percent (2%) of the gross sales, as hereinafter defined, in excess of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00) in any annual period.

## I. Wal-Mart's Appeal

We find no error in the magistrate's direction of a verdict in favor of United Dominion on the issue of whether Wal-Mart had breached the lease agreement by ceasing sales operations upon the premises and using the leased premises solely for storage.

The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties. *Chan v. Thompson*, 302 S.C. 285, 395 S.E. (2d) 731 (Ct. App. 1990). In determining the intention of the parties, the court first looks to the language of the contract. *C.A.N. Enterprises, Inc. v. South Carolina Health and Human Services Finance Commission*, 296 S.C. 373, 373 S.E. (2d) 584 (1988). If the language is clear and unambiguous, the language alone determines the contract's force and effect. *Conner v. Alvarez*, 285 S.C. 97, 328 S.E. (2d) 334 (1985).

The terms in an unambiguous contract are to be given their plain, ordinary, and popular meaning. *C.A.N. Enterprises, Inc.*, 296 S.C. at 377, 373 S.E. (2d) at 586. If a contract is unambiguous, extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms. *Id.* at 377-78, 373 S.E. (2d) at 586. Also, the purport of a written agreement is to be gleaned from the contents of the whole instrument. *Carr v. United Van Lines, Inc.*, 289 S.C. 194, 345 S.E. (2d) 734 (Ct. App. 1986).

In an action at law, our review extends only to the correction of errors of law; and where an action of law presents a question as to the construction of a written contract and the language of the contract is clear and unambiguous, the question is not one of fact but one of law. *J.T.M. Co., Inc. v. Vane*, 283 S.C. 512, 323 S.E. (2d) 794 (Ct. App. 1984).

Here, the language of the lease agreement, as reflected by

the lease documents, is clear and unambiguous. It plainly requires Wal-Mart to operate a "discount department store" on the premises. Wal-Mart, however, was using the property solely for storage.

Suffice it to say, a "discount department store" is not a warehouse, where "wares, or goods, are stored, as before being distributed to retailers." *Webster's New Universal Unabridged Dictionary* 2060 (2d ed. 1983). Rather, a "discount department store" is a large retail establishment where various kinds of goods, wares, and merchandise arranged in departments are sold at reduced prices. *See id.* at 487 (defining the term "department store" to mean "a large retail store not confined to one kind of goods but handling various kinds arranged in departments"); *id.* at 522 (defining the term "discount" to mean "to deduct from; to reduce the quantity, cost, or value of").

The plain language of paragraph 26 also requires Wal-Mart, especially when read with paragraph 4, to operate "its business," a discount department store, continuously on the leased premises.

Wal-Mart did not merely covenant to operate a discount department store on the premises, it covenanted to operate a discount department store "with due diligence in an effort to produce all of the gross sales" it can produce by employing that "manner of operation" "during the customary days and hours for such type of business in the city or trade area in which the demised premises are located." It also covenanted to pay, in addition to a base monthly rent, a percentage rent based on gross sales. The covenants that Wal-Mart maximize its efforts to produce gross sales during designated times and that it pay a minimum monthly rental plus a percentage of its gross sales are simply not consistent with Wal-Mart's being able to shut down its sales operation and move it elsewhere. *See Mayfair Operating Corp. v. Bessemer Properties,* 150 Fla. 132, 7 So. (2d) 342 (1942) (where the court held a tenant of a movie theater who was required to pay a fixed minimum monthly rental plus a percentage of its gross revenue and to use its best efforts to obtain and maintain the highest volume of business on the leased premises could not suspend its movie theater operation during the summer months but was required to operate continuously); *see also Jerrico, Inc. v. Wash-*

*ington National Insurance Co.*, 400 So. (2d) 1316 (Fla. Dist. Ct. App. 1981) (wherein the court recognized the inclusion in a lease of a "best efforts" clause distinguishes *Mayfair* from other cases that hold a lessee is under no obligation to continue a business operation where the lessee contracted to pay a fixed minimum rental and a rental based on gross receipts); *cf. Diltz v. J & M Corp.*, 381 So. (2d) 272 (Fla. Dist. Ct. App. 1980) (where a lease provided for a monthly rent based on a percentage of gross sales but not less than a fixed minimum sum and the lease did not require the lessees of a fast-food business to use their best efforts to operate the business on the demised premises, the lessees did not breach the lease by discontinuing their business and locating it elsewhere); *Slidell Investment Co., Inc. v. City Products Corp.*, 202 So. (2d) 323 (La. Ct. App. 1967), *cert. denied*, 251 La. 387, 204 So. (2d) 572 (1967) (civil law case in which the court, where the lessee during the term of a lease rented space in a shopping center across the street and thereafter used the leased premises as a warehouse, held a lease contained an implied continuous operation clause where the lease of premises to be used for a variety store provided for a basic rent and for a rent based on a percentage of gross sales).

We need not address the issue raised by Wal-Mart concerning the effect of the provision, contained in paragraph 10, allowing Wal-Mart to sublet the demised premises. The circuit court did not treat this issue and Wal-Mart made no motion pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to have it do so. *Talley v. South Carolina Higher Education Tuition Grants Committee*, 289 S.C. 483, 347 S.E. (2d) 99 (1986).

## II. United Dominion's Appeal

■ United Dominion's appeal relates solely to the denial by the circuit court of United Dominion's motion to increase Wal-Mart's appeal bond pending Wal-Mart's appeal to the Supreme Court.

As we indicated, the magistrate set the bond at $100,000 when Wal-Mart appealed to the circuit court. The circuit court thereafter required only one surety but required Wal-Mart to pay the base rent into an escrow account pending final determination of Wal-Mart's appeal. Wal-Mart posted the bond as re-

quired and began paying the base rent into an escrow account.

United Dominion brought this motion after the circuit court affirmed the magistrate and Wal-Mart gave notice of its appeal.

The amount of Wal-Mart's appeal bond was a matter committed to the sound discretion of the courts below. 5A C.J.S. *Appeal & Error* § 1633, at 187-88 (1958); 5B C.J.S. *Appeal & Error* § 1816, at 152 (1958). We discern no error here, aware as we are that the demised premises have now been leased to another department store and that the escrow amount continues to grow at more than $13,000 a month.

Affirmed.

SANDERS, C.J., and GARDNER, J., concur.