972 F.2d 340
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J.R. RAMON & SONS, Inc., Plaintiff-Appellant,
v.
TOMPKINS & ASSOCIATES of Oklahoma City, Oklahoma, d/b/a
Tompkins & Associates, Incorporated of Charleston,
South Carolina, Defendant-Appellee.
J.R. RAMON & SONS, Inc., Plaintiff-Appellee,
v.
TOMPKINS & ASSOCIATES of Oklahoma City, Oklahoma, d/b/a
Tompkins & Associates, Incorporated of Charleston,
South Carolina, Defendant-Appellant.
 Nos. 91-1858, 92-1281.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 16, 1992
Decided: July 28, 1992
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CA-90-1103-2-18)
 ARGUED: Stephen Peterson Groves, Sr., Young, Clement, Rivers & Tisdale, Charleston, South Carolina, for Appellant.
 Paul Francis Tecklenburg, McNair Law Firm, P.A., Charleston, South Carolina, for Appellee.
 ON BRIEF: Thomas S. Tisdale, Jr., Young, Clement, Rivers & Tisdale, Charleston, South Carolina, for Appellant.
 D.S.C.
 Affirmed.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 J. R. Ramon & Sons, Inc., appeals an order of the district court granting defendant Tompkins & Associates' motion for summary judgment. We agree with the district court that Ramon waived the claims asserted in its complaint, and we therefore affirm.
 
 I.
 
 2
 On December 19, 1989, appellee Tompkins contracted with the United States Air Force for removal of debris that Hurricane Hugo left on the Charleston (South Carolina) Air Force Base. Two weeks later, Tompkins awarded appellant Ramon a subcontract to pick up and haul away limbs pruned from trees and other such loose material. The subcontract contained a clause requiring Tompkins to consult with Ramon and to share additional proceeds if the Air Force requested change orders under the prime contract. Notwithstanding this provision, Tompkins later negotiated a significant expansion of the prime contract (in dollar terms, from $348,000 to $514,200) without consulting Ramon. Ramon asserts that it performed extra work because of this expansion, for which it was not paid.
 
 
 3
 On April 21, 1990, Tompkins tendered final payment ($47,760) under the subcontract. Joe Ramon, Jr., accepted the payment on behalf of Ramon and signed a standard subcontractor's waiver of claims:
 
 
 4
 IN CONSIDERATION of ... $185,260.00 ... the receipt of which is hereby acknowledged as full and complete payment, the undersigned hereby fully and forever waivers [sic] any and all claims for work done and materials furnished by the undersigned ... in connection with the debris removal project known as:
 
 CHARLESTON AIR FORCE BASE F38610-90-C0062
 
 5
 Mr. Ramon alleges that he signed the waiver in order to receive the final payment, and that he feared that Tompkins would withhold payment if he let it be known that he intended to seek additional compensation. At his deposition, Ramon explained that he felt he was signing "under duress" because he needed the $47,000 to pay his employees. He admitted, though, that "I was deceiving [Mr. Tompkins, owner of Tompkins & Associates] in essence by receiving that check and him thinking I wasn't going to put any claims in."
 
 
 6
 Less than a month later, Ramon filed this suit in district court, alleging claims for breach of contract, constructive trust, accounting, unjust enrichment, and quantum meruit. Jurisdiction was grounded on diversity of citizenship. Tompkins moved for summary judgment based on the waiver of claims. The district court granted the motion from the bench on September 20, 1991, and entered judgment for Tompkins on September 27.
 
 
 7
 Ramon filed a notice of appeal on October 30, 1991, three days out of time. By order dated January 21, 1992, the district court permitted late filing of the notice of appeal under Fed. R. App. Pr. 4(a)(5). Tompkins cross-appeals the latter order.
 
 II.
 
 8
 First of all, we find that the district court's decision to permit late filing of the notice of appeal was not an abuse of its discretion, and we therefore consider the merits of Ramon's appeal.
 
 
 9
 The common-law parol evidence rule is alive and well in South Carolina. C.A.N. Enterprises, Inc. v. South Carolina Health and Human Services Finance Commission, 296 S.C. 373, 373 S.E.2d 584, 586 (1988); Conner v. Alvarez, 285 S.C. 97, 328 S.E.2d 334 (1985); United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc., 413 S.E.2d 866, 868 (S.C.App. 1992). If the language of a written contract, in its plain, ordinary, and popular meaning, is unambiguous, "extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms." United Dominion Realty, 413 S.E.2d at 868.
 
 
 10
 Ramon argues that it intended the waiver of claims to apply only to work within the scope of the original prime contract, and not to any extra work. Ramon's subjective intent is irrelevant to interpretation of the waiver, however, unless the language of the waiver is ambiguous. We agree with the district court that it is not. The instrument plainly waives all claims by Ramon against Tompkins for work on the airbase, and it is a complete defense to this suit.
 
 
 11
 Moreover, Mr. Ramon's admission that he "was deceiving" Tompkins shows that he knew that Tompkins intended and understood the waiver to include any claims for extra work. Accordingly, even if extrinsic evidence of the parties' intentions were permitted to alter the terms of the written agreement, there was no "meeting of the minds" to exclude claims for extra work from the waiver.
 
 
 12
 The judgment is affirmed.*
 
 AFFIRMED
 
 
 *
 Though Mr. Ramon testified at his deposition that he signed the release under "duress," Ramon has not argued that the"duress" was sufficient to invalidate the waiver of claims. See In re Nightingale's Estate, 182 S.C. 527, 189 S.E. 890, 897 (1936) (essentials of duress invalidating contract are coercion, putting a person in such fear that he is bereft of the quality of mind essential to make a contract, and procurement of contract thereby.)