513 S.E.2d 123

**Jack L. MOSER, Barbara J. Moser and
JLM Enterprises, Inc., Appellants,**

v.

**James W. GOSNELL and Vivian A. Gosnell, Respondents.**

**No. 2951.**

Court of Appeals of South Carolina.

Heard Jan. 14, 1999.
Decided March 1, 1999.

426

Ronald G. Tate, Jr., of Gibbes, Gallivan, White & Boyd; and Robert E. Hoskins, of Foster & Foster, both of Greenville, for appellants.

Michael J. Giese, of Leatherwood, Walker, Todd & Mann, of Greenville, for respondents.

STILWELL, Judge:

This breach of contract action involves a dispute over the terms of a covenant not to compete. Jack L. Moser, Barbara J. Moser and JLM Enterprises sued James W. and Vivian A. Gosnell and alleged that the Gosnells breached the covenant.

Both parties moved for summary judgment. The trial court denied the Mosers' motion and granted the Gosnells' in part. The Mosers appeal. We affirm.

## FACTS

The Gosnells owned Certified Cleaning and Contractors until 1994 when they sold the business to the Mosers. Certified was a full-service construction and carpet cleaning company that performed a variety of services including remodeling, renovation, restoration, and painting. Prior to purchasing Certified, the Mosers received a business brochure outlining Certified's wide variety of services. They also received a prospectus which revealed that up to 80% of Certified's revenue came from insurance funded restoration work and the remaining revenue came from carpet cleaning and other non-insurance funded services.

The Gosnells entered into an Asset Purchase and Sale Agreement for the sale of substantially all of the assets of Certified to the Mosers for $585,000. The preamble to the Agreement stated that the "Seller is in the business of insurance funded restoration work for fire and water damage as well as commercial and residential carpet cleaning and the like."

The Agreement required the Gosnells to enter into a covenant not to compete, a copy of which was incorporated by reference into and supported the Agreement. The covenant stated "Seller has been engaged in the business of insurance funded restoration work for fire and water damage as well as commercial carpet cleaning throughout upstate South Carolina." One hundred forty-five thousand dollars of the total purchase price was attributed to the covenant. The Gosnells agreed that for three years, and within the geographical limits of Greenville, Spartanburg, and Laurens counties, they would not:

> own, manage, operate, control, represent, be employed by, participate in, or be connected in any manner, directly or indirectly as consultant, shareholder, employee, partner or in any fashion whatsoever, with the ownership, management, operation or control of any person or other entity that

is engaged in the same business as Seller was in prior to this sale.

The covenant also provided that in the event of a "breach or threatened breach," the Mosers would be entitled to both injunctive relief and damages "in an amount equal to the purchase price of the business." Certified eventually went out of business, and the Mosers sued, seeking liquidated damages of $585,000.

The trial court held that the Mosers' claims against the Gosnells were limited to only insurance funded services and commercial carpet cleaning. The court concluded that the covenant unambiguously defined Certified's business as "insurance-funded restoration work for fire and water damage as well as commercial carpet cleaning throughout upstate South Carolina." Thus, any non-insurance funded restoration, remodeling, repair services, and residential carpet cleaning performed by the Gosnells was allowed under the covenant.

The court also found that the Gosnells breached the covenant by engaging in insurance related projects within the designated areas of the covenant and reserved the issue of damages for a jury.[1] The court found that any breach by the Gosnells of the covenant "may total no more than a few thousand dollars." Thus, it determined that the liquidated damages provision constituted a penalty because the amount of damages stipulated to in the covenant was disproportionate to any probable damage resulting from a breach.

## DISCUSSION

Summary judgment is appropriate where it is clear that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be

---

1. We note one inconsistency in the trial court's order. The court stated in its order that it denied the Mosers' motion for summary judgment. However, the court actually granted partial summary judgment to the Mosers on insurance related projects that the Gosnells admitted violated the covenant. The parties subsequently reached a settlement of these admitted violations of the covenant.

viewed in the light most favorable to the nonmoving party. *Barr v. City of Rock Hill,* 330 S.C. 640, 500 S.E.2d 157 (Ct.App.1998).

## I. Covenant Not to Compete

■ The precise issue presented is whether the covenant prevented the Gosnells from engaging in services other than "insurance funded restoration work for fire and water damage and commercial carpet cleaning." The trial court held that it did not and we agree.

■ Generally, covenants not to compete are looked upon with disfavor, examined critically, and strictly construed. *Cafe Assocs. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). When a contract is clear and unambiguous, the construction of the contract is a question of law for the court. *Conner v. Alvarez,* 285 S.C. 97, 328 S.E.2d 334 (1985). In construing the terms of a contract, the foremost rule is that the court must give effect to the intentions of the parties by looking to the language of the contract. *Id.* at 101, 328 S.E.2d at 336. When the language of a contract is clear, explicit, and unambiguous, the language of the contract alone determines the contract's force and effect and the court must construe it according to its plain, ordinary, and popular meaning. *Id.*

The language of the covenant expressly and unambiguously limits application of the covenant to insurance funded restoration work and commercial carpet cleaning. Specifically, the operative provision of the covenant prohibits the Gosnells from competing in the "same business" as Certified for a period of three years in certain designated counties. In the recital clause, the covenant defines the business as "insurance funded restoration work for fire and water damage as well as commercial carpet cleaning."

Therefore, the express language of the covenant evidences the parties' intentions to prevent the Gosnells from competing *only* in insurance funded services and commercial carpet cleaning, the primary focus of Certified's business prior to the sale. Therefore, the court correctly held that the Gosnells did not violate the covenant by engaging in non-insurance funded work and residential carpet cleaning.

The Mosers argue that the recital clause in the covenant should be considered along with other evidence indicating that Certified's business prior to the sale was more expansive than that included in the covenant. The Mosers point out that the business brochure, prospectus, and Agreement provide proof that the parties intended for the covenant to apply to all work performed by Certified prior to the sale.

It is uncontested that Certified's business prior to the sale consisted of a variety of services. Nevertheless, the covenant specifically and unambiguously prevented the Gosnells from competing only in insurance funded projects and commercial carpet cleaning. That Certified's business was actually broader than that defined in the covenant is irrelevant to the interpretation and application of the covenant. Furthermore, because the covenant is clear and unambiguous, we look only to the language of the covenant and not to extrinsic evidence to determine the intent of the parties. *See C.A.N. Enters., Inc., v. South Carolina Health & Human Servs. Fin. Comm'n,* 296 S.C. 373, 373 S.E.2d 584 (1988) (when a contract is clear and unambiguous, extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms).

## II. Damages Clause

The Mosers also argue the trial court erred in holding that the liquidated damages provision of the covenant is an unenforceable penalty. We disagree.

The question of whether a sum stipulated to be paid upon breach of a contract is liquidated damages or a penalty is one of construction and is generally determined by the intention of the parties. *Tate v. LeMaster,* 231 S.C. 429, 99 S.E.2d 39 (1957). The determination does not necessarily depend upon the language used in the contract. *Id.* Rather, the determination depends upon the nature of the contract in light of the circumstances, and the attitude and intentions of the parties. *Benya v. Gamble,* 282 S.C. 624, 321 S.E.2d 57 (Ct.App.1984), *cert. granted,* 284 S.C. 366, 326 S.E.2d 654, *and cert. dismissed,* 285 S.C. 345, 329 S.E.2d 768 (1985).

The test for determining whether a stipulation constitutes a penalty is whether "the sum stipulated is so large

that it is plainly disproportionate to any probable damage resulting from breach of the contract." *Tate,* 231 S.C. at 442, 99 S.E.2d at 46. If the sum stipulated is reasonably intended by the parties as the predetermined measure of compensation for actual damages for nonperformance, the stipulation is for liquidated damages. *Id.* at 441, 99 S.E.2d at 45–46. However, where the stipulation is not based upon contemplated actual damages but is intended to provide punishment for breach of the contract, it is a penalty. *Id.*

Here, it is evident from the covenant's language that the purpose of the damages provision was to deter the Gosnells from breaching the covenant and to punish the Gosnells upon a breach. The covenant provides that the Mosers are entitled to damages of $585,000 in the event of a breach or threatened breach. Thus, the covenant prevents not only actual competition but also threatened competition. Clearly, damages of $585,000 could not reasonably have been intended as a predetermined measure of actual damages for the mere threat of a breach by the Gosnells. Rather, damages of such magnitude were designed for punishment.

■■■ Additionally, the liquidated damages provision is an unenforceable penalty because the stipulated sum is clearly disproportionate to any probable damage resulting from a breach. At the time the parties signed the covenant, the parties could not reasonably have believed that any probable damage resulting from a breach of the covenant would amount to $585,000. In fact, the evidence presented to the trial court revealed that the actual damages resulting from the Gosnells' breach amounted to only a few thousand dollars. Therefore, the trial court did not err in holding that the liquidated damages provision of the covenant is an unenforceable penalty. Accordingly, the order of the trial court is

**AFFIRMED.**

HOWELL, C.J., and ANDERSON, J., concur.