THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Watts Construction Company, Inc. and Donald Watts, Appellants,
 
 
 

v.

 
 
 
 Gerald H. Feltes and Lupe Feltes, Respondents.
 
 
 

Appeal From Lexington County
 Clyde N. Davis, Jr., Master-in-Equity

Unpublished Opinion No.  2006-UP-015
Heard December 6, 2005  Filed January 11, 2006

AFFIRMED

 
 
 
 Katherine Carruth Link and S. Jahue Moore, both of West Columbia, for Appellants.
 George A. Kastanes, of Gilbert, for Respondents.
 
 
 

PER CURIAM: Watts Construction Company, Inc., and Donald Watts (Appellants) appeal the Master-In-Equitys order awarding $80,000 in damages to Gerald and Lupe Feltes for breach of a construction contract and breach of the implied warranty of workmanlike service.  We affirm.    
FACTS
The Feltes entered into a contract with Watts Construction Company, Inc. and Donald D. Watts for the construction of a new residence for the purchase price of $175,000 with a $17,500 initial deposit.  The contract included allowances for lighting, hardware, flooring (tile, hardwood, and carpet), fixtures, windows, a heat and air system, two garage doors with openers, cabinetry, certain ceiling heights, brick and vinyl exterior, and countertops.  The contract also stipulated [t]here will be no occupancy until all work has been completed and all costs have been paid.  As to any changes [desired by the Feltes] during the period in which the home [was] being constructed, the contract provides all extras [are to] be charged and billed to [the Feltes] at the time the changes are complete.  An employee of Watts Construction composed the agreement on company letterhead.  The Feltes and Appellants signed the document.  A handwritten amendment to the contract was later added setting the closing date on the construction of the home for December 15, 1997.  
          Construction began in the summer of 1997.  Throughout the construction process, Appellants made periodic draws against the Feltes construction loan.  On December 11, 1997, the Feltes contacted their construction loan company and requested that Appellants not be allowed to make further draws on the account without their express approval.  At this point, the Feltes had paid Appellants a total of $135,000.  On December 16, 1997, the Feltes provided Appellants with a written inspectors report and a letter citing the items that needed immediate attention for completion of the home.  Due to lack of response and progress on the home, the Feltes terminated the contract with Appellants on January 12, 1998.  
Appellants brought a mechanics lien foreclosure and breach of contract actions against the Feltes.  The Feltes counterclaimed for breach of contract and breach of the implied warranty of workmanlike service.  By consent of the parties, the mechanics lien cause of action was dismissed.  The Master awarded the Feltes $153,505.23 for construction loan interest paid after December 15, 1997, costs incurred to complete the house, and cost of repairs necessary to correct the defective workmanship.  This amount was to be offset by the $40,000 remaining due under the terms of the contract.  
Appellants then filed a motion for new trial or amended judgment.  Appellants argued the following issues: (1) Daniel Watts should have been excluded from the award because the Feltes produced no evidence warranting piercing of the corporate veil to reach him as a party; (2) Appellants were prejudiced by the two month delay between the hearing dates; (3) Appellants deserved an award because the overwhelming evidence proves the Feltes breached the contract; and (4) in the alternative, the amount awarded should be reduced, including increasing the amount offset to encompass the overages.  
The Master found the first issue was not preserved, but that all evidence indicated the judgment should be entered against both Plaintiffs.  Noting his extensive review of his thirteen pages of notes from the first hearing prior to the second part of the trial, the Master found no prejudice to Appellants from the bifurcated trial.  Finally, the Master reduced the total judgment of $113,505.23 to $80,000.  This appeal followed.                                   
STANDARD OF REVIEW
An action for breach of contract seeking money damages is an action at law.  Sterling Dev. Co. v. Collins, 309 S.C. 237, 240, 421 S.E.2d 402, 404 (1992).  In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law.  Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C., 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct. App. 2003).  The trial judges findings of fact will not be disturbed on appeal unless those findings are wholly unsupported by the evidence or controlled by an erroneous conception or application of the law.  Maddux Supply Co. v. Safhi, Inc., 316 S.C. 404, 406, 450 S.E.2d 101, 102 (Ct. App. 1994). 
LAW/ANALYSIS
Appellants contend the Master erred in awarding the Feltes $80,000 for breach of contract and breach of the implied warranty of workmanlike service, or, in the alternative, in failing to set-off this award with the amounts attributable to the installation of the septic tank and the construction overages.  We disagree.
 A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct.  Roberts v. Gaskins, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997).  When a contract is clear and unambiguous, the construction of the contract is a question of law for the court.  Conner v. Alvarez, 285 S.C. 97, 328 S.E.2d 334 (1985).  In construing the terms of a contract, the foremost rule is that the court must give effect to the intentions of the parties by looking to the language of the contract.  Id. at 101, 328 S.E.2d at 336. When the language of a contract is clear, explicit, and unambiguous, the language of the contract alone determines the contracts force and effect and the court must construe it according to its plain, ordinary, and popular meaning.  Moser v. Gosnell, 334 S.C. 425, 430, 513 S.E.2d 123, 125 (Ct. App. 1999).
A builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, and workmanlike manner.  See Hill v. Polar Pantries, 219 S.C. 263, 64 S.E.2d 885 (1951).  A builder also has a legal duty to undertake construction commensurate with industry standards.  Kennedy v. Columbia Lumber and Mfg. Co., Inc., 299 S.C. 335, 346, 384 S.E.2d 730, 737 (1989) (citing Terlinde v. Neely, 275 S.C. 395, 399, 271 S.E.2d 768, 770 (1980)).
According to the amended contract, Appellants were responsible for completing construction of the home in a condition ready for occupancy by December 15, 1997.  Watts admitted that the agreement included an obligation to complete construction, as evidenced by the issuance of a certificate of occupancy.  In order to receive the certificate of occupancy, the house had to have electricity, a septic system, and plumbing with connected water.  
According to the Feltes, Appellants still had not installed the carpet, completed painting, or repaired defective brick work by the contracts deadline, December 15.  Furthermore, Appellants poor grading of the land caused the Feltes septic system permit to be revoked.  Appellants contend they did not complete construction because the Feltes would not allow them to take a draw from the construction loan.  However, the contract did not require the Feltes to pay draws to Watts during the construction of the house.  The contract only required that the Feltes make an initial payment of $17, 500 and pay the balance of the construction price upon completion of the house.   
After Appellants breached the contract by not completing it by the December 15 deadline, the Feltes gave Appellants additional time (more than a month) to complete a list of unsatisfactory or incomplete items.  However, these specified items were not completed.  Furthermore, several experts the in construction of residential houses testified that Appellants construction of the home substantially deviated from the industry standard.  Though their inspections cited numerous problems with the interior of the home, the majority of the inspections focused on the deficiency of the brick work.  The brick work problems included too many problems with the mortar joint width, damaged brick, . . . chipped, broken out areas, mortar not matching, flashing omitted, which is a code violation.  According to the construction experts, the quality of the brick work was below the standard that would be acceptable in the home construction industry.  The construction experts also stated that the tiling, staining of the trim, and installation of the windows and cabinets were substandard.  
The Master had the benefit of hearing and observing the witnesses in this case; in addition, he inspected and personally observed the construction project in dispute.  Diamond Swimming Pool Co. v. Broome, 252 S.C. 379, 383, 166 S.E.2d 308, 310 (1969).  Based on more than sufficient evidence in the record to support the Masters finding of a breach of contract and breach of the implied warranty of workmanlike service, we affirm the Masters decision as to the $80,000 award to the Feltes.    
Appellants argue damages should be reduced by the amount used to install the septic tank and the amount Watts spent on construction overages.  We disagree.
Mark Burgess, an expert in home construction, estimated that to complete construction of the home and repair the substandard work would cost in the proximity of $143,801.79.  While this amount includes the cost of the installation of the septic system, which is not covered in the contract, there is no dispute that DHEC revoked the septic tank permit because of Appellants improper grading of the land.  Appellants also claim they are entitled to a $6,360.38 offset of the overage charges for extras added by the Feltes after the contract was signed.  We find the Master effectively took out the cost of installing the septic tank and offset the overages by lowering the damage award by $33,505.23. 
Appellants claim the Master erred in failing to dismiss Donald Watts as a party in this action.  We disagree.  
It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review.  Ellie, Inc. v. Miccichi, 358 S.C. 78, 102, 594 S.E.2d 485, 498 (Ct. App. 2004).  A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial.  Patterson v. Reid , 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995).  The first time Appellants raise this issue was in the Rule 59(e) motion for reconsideration.  Therefore, as the Master concluded, this issue was not timely raised and is not preserved for our review.  
For the reasons stated herein, the Masters order is
AFFIRMED.     
GOOLSBY, ANDERSON, and SHORT, JJ. concur.