0954

C.A.N. ENTERPRISES, INC., d/b/a Oakmont Nursing Centers, (North, East and West), Appellant v. SOUTH CAROLINA HEALTH AND HUMAN SERVICES FINANCE COMMISSION, as Successor in Interest to the South Carolina Department of Social Services, Respondent.

(357 S. E. (2d) 714)

Court of Appeals

*David M. Rogers,* Greer, *for appellant.*

*Richard Mark Gergel,* Columbia, *for respondent.*

Heard March 19, 1987.

Decided May 4, 1987.

GARDNER, Judge:

This is an action for judicial review under the Administrative Procedures Act. The final administrative decision was affirmed by the Court of Common Pleas; this order is before us on appeal. We reverse.

The respondent South Carolina Health and Human Services Finance Commission (the State) is the successor to the South Carolina Department of Social Services, which administered the State medicaid program until June 1985.

This case involves the interpretation of a contract[1] prepared by the State and which governs the relationship between the State and nursing providers such as C.A.N. Enterprises, Inc., d/b/a Oakmont Nursing Centers (C.A.N.). On the basis of the provider's certification and a limited in-house review by the State known as a "desk review," the State pays a provider a per deim rate under an established reimbursement formula.

By the terms of the contract, the provider's books are subject to audit and the provider may be required, under the terms and conditions set forth in the contract, to repay the State any funds the provider receives which are timely disallowed by the State.

The sole question before this Court in the case on hand is whether a disallowance of $24,080 paid to C.A.N. by the State was timely disallowed. The timeliness of the disallowance is to be resolved by the construction of the contract between C.A.N. and the State.

---

[1] This case actually involves two different contractual periods; however, for the purpose of this appeal, the contractual provisions are the same for each of these two periods.

Specifically, the contract provides by Section E4 thereof:

4. *Audits During and After Contract Period.*
The provisions of this section shall apply to audits during the contract period and audits after termination of this contract and for a period of three (3) years thereafter.

C.A.N.'s books were reviewed within the three-year period but the disallowance was made after the three-year time limit expired.

We are called upon to decide whether the word "audit," as used in the contract before us, encompasses within its meaning the disallowance of a reimbursement paid by the State to C.A.N.

C.A.N. contends that its contract with the State requires the issuance of a final audit report or disallowance within three years of the close of the contract period and the State's failure to meet this deadline vitiates its right to disallow the reimbursements which had been paid to C.A.N. On the other hand, the State asserts that the contract contains no deadline for disallowances and that the time limit applies only to the on-site field work by the State's auditors.

The commission held that the contract does not place any time constraints on the issuance of final audit reports and notice thereof; the commission observed that the adoption of C.A.N.'s argument regarding the meaning of the term "audit" would render the contract's otherwise logical provisions redundant.

The appealed order, confirming the commission's report then held:

This definition of "audit" does not stand alone and the world's usage throughout the contract clearly indicates it does not include the issuance of a final audit report.

While it is true that subsequent sections of the contract do seem to provide that an on-site inspection of the books can be made any time within three years, and other equivocal usage of the words "audit" and "audit report," the above-quoted holding of the appealed order is vitiated by the following stipulation of the parties contained in the statement of the case:

The contract provides that "audits" must be completed within three years of the close of the contract period in order for the State to recoup overpayments under the South Carolina Medicaid Program.

Stipulations are binding upon parties who make them. *Corley v. Rowe*, 280 S. C. 338, 312 S. E. (2d) 720 (Ct. App. 1984); 73 Am. Jur. (2d) *Stipulations* Section 8 at 543 (1974); 83 C.J.S. *Stipulations* Section 14 at 33 (1953). We hold that, under this stipulation, Section E4, hereinbefore quoted, limits the completion of an audit to three years after the close of the contract period.

Whether the word "audit" as used in the contract encompasses a disallowance is, then, the issue posed.

And this issue is resolved by the rule of law that where the parties define the words or terms which they propose using, as was done in the contract before us, the contract will be interpreted according to such definitions if free from ambiguity. This is the rule adopted in this state in the case of *Standard Oil Co. v. Powell Paving and Contracting Co.*, 139 S. C. 411, 441, 138 S. E. 184, 193 (1927); there our Supreme Court used the following interesting language:

Parties to a contract may, by agreement, attribute to a word used in a contract any meaning they may desire, and if such meaning is clear the courts will give effect to it.

As was well said in *Morrison v. Wilson*, 30 Cal. 344: "The question then comes to this, have the parties to a written contract the right to set aside the general sense of the words which they use, and for the purposes of the contract to assign to them another and different meaning by convention? That they have both the right and the power to do this there can be no question. The meaning of language depends upon usage and varies with it. If parties should insert a clause in their contract to the effect that the language used by them should be taken in a certain sense which had become provincial, or in the meaning borne by it in a particular trade, and particularly if they should proceed to state the agreed definition in detail, and the definition turned out to be clear and unambiguous, the general meaning would

have to give way; and it follows that it must be considered that parties have the power to innovate upon the general meaning of words at large free from all legal restrictions. If they see fit to agree that mile shall stand for league, or grant, bargain and sell for quitclaim, *or even black for white,* however we might marvel at the caprice, we could not question the power." [Emphasis ours.]

The contract before us contains an agreed-to-definition of terms. Section A of the contract, in pertinent part, provides:

A. *Definitions.*
As used in this contract, the following terms shall, unless another meaning is clearly indicated by context, have the following defined meanings:

\*   \*   \*   \*

*Audit:* To examine for the purpose of authentication *and* to adjust, allow, disallow or reject an account of the Provider. (Emphasis added.)

As defined by the contract, "audit" has two coordinate meanings: first, the examination of the books and second, disallowance or rejection of an account of the providers. The examination of the books and disallowances are conjunctively included within the meaning of the word "audit." We therefore hold, under the stipulation of the parties of this action as to the three-year limitation for an audit, and the agreed-to definition of the word "audit," that the appealed order is erroneous as a matter of law. We hold, for the reasons stated, that because disallowances by the State were not made within the three-year limitation, judgment should have been rendered for C.A.N.

The conclusion we reach is bolstered by the clear principle of contract law that any ambiguity in a contract must be construed against the party who prepared the contract, which in this case was the State. *See Duke Power Co. v. S. C. Public Serv. Comm.,* 284 S. C. 81, 326 S. E. (2d) 395 (1985). And where a contract is susceptible of more than one interpretation, any doubt is to be resolved against the party

whose business it was to speak without ambiguity. *Williams v. Teran,* 266 S. C. 55, 221 S. E. (2d) 526 (1976).

For the reasons stated, the appealed order is reversed and the case is remanded for entry of judgment in favor of C.A.N.

Reversed and remanded.

SHAW and BELL, JJ., concur.