## 22911

C.A.N. ENTERPRISES, INC., d/b/a Oakmont Nursing Centers, (North, East and West), Respondent v. SOUTH CAROLINA HEALTH AND HUMAN SERVICES FINANCE COMMISSION, as Successor in Interest to the South Carolina Department of Social Services, Petitioner.

(373 S. E. (2d) 584)

Supreme Court

*Richard Mark Gergel* and *W. Allen Nickles, III, Gergel, Burnette & Nickles,* Columbia, *for petitioner.*

*David M. Rogers* of *Carter, Smith, Merriam, Rogers & Traxler,* Greer, *for respondent.*

Heard May 16, 1988.

Decided Oct. 24, 1988.

TOAL, Justice:

This case involves an interpretation of a contract entered into between the South Carolina Health and Human Services Finance Commission (State)[1] and Oakmont Nursing Centers (Oakmont). The question for review is whether or not Oakmont, a for profit nursing home, may retain alleged overpayments of Medicaid funds received by it from the State by reason of the State's failure to timely complete its

---

[1] The South Carolina Health and Human Services Finance Commission is the successor to the Department of Social Services.

audit wherein the overpayments were disallowed. We granted certiorari to review the decision of the Court of Appeals in *C.A.N. Enterprises v. S. C. Health and Human Services Finance Comm'n*, 292 S. C. 556, 357 S. E. (2d) 714 (1987).

Oakmont was a nursing home provider to the State pursuant to a series of contracts whereby it provided services to indigent Medicaid eligible patients. During the duration of the contract, Oakmont was reimbursed by the State on the basis of cost information supplied by Oakmont. At the conclusion of the contract, these reimbursements were subject to audit by the State and to reduction should any costs be found nonallowable under the terms of the contract and federal Medicaid reimbursement regulations which were incorporated therein. The contract contained procedures for post contract audit by the State of the Medicaid funds received by Oakmont during the contract period. Pursuant to this procedure, upon completion of the contract in 1979, the State audited the financial records of Oakmont. The auditing process took a considerable length of time, well over three years. Ultimately, the State issued its Final Audit Report in which it disallowed $24,080.00 of the payments previously made to Oakmont and demanded that this sum be repaid to the State. Oakmont contested the amount claimed due, and appealed the audit findings to the South Carolina Department of Social Services Fair Hearing Panel (Hearing Panel) pursuant to the provisions in the contract[2] and S. C. Regulation 114-35.1. Oakmont contested the disallowances on the merits but also contended that they "were untimely and thus, invalid."

The Hearing Panel concluded that since the contract contained no deadline for final audit reports, the State was entitled to recover the overpayment from Oakmont. Oakmont appealed the decision of the Hearing Panel to the Circuit Court. On appeal to the Circuit Court, Judge William B. Traxler found substantial evidence to support the admin-

---

[2] Section H provides that "if the provider and DSS fail to resolve any dispute, the sole and exclusive remedy shall be that the provider may request a hearing from DSS within 30 days of the date of the determination by which the provider believes itself aggrieved." The matters subject to appeal include overpayments determined owing or due to DSS as a result of audits or inspections.

istrative finding and affirmed the panel's decision. The South Carolina Court of Appeals reversed the decision of the Circuit Court and remanded with instructions to enter a judgment in favor of Oakmont. We affirm, as modified, the decision of the Court of Appeals.

As stated above, Oakmont and the State entered into a contract which provided for the payment and reimbursement of Medicaid benefits. It also expressly incorporated the provisions of the federal Medicaid and medicare regulations and the State plan for medical assistance. The clause (E-4), which is the center of this dispute, reads as follows:

> "4. *Audits During and After Contract Period.* The provisions of this section shall apply to audits during the contract period and audits after termination of this contract and for a period of three years thereafter."

The parties agreed on certain definitions for terms employed in the contract, and defined audit thusly:

> "*Audit:* To examine for the purpose of authentication and to adjust, disallow or reject an account of the provider."

The parties now disagree as to the interpretation of the word "audit."

Interpreting the word "audit" requires a review of the audit process delineated in the contract. Under the State Plan, which is incorporated into the contract in question, there is a multi-step process to obtain and retain Medicaid benefits for nursing homes. First, during the duration of the contract, the nursing home submits a certified statement of costs and that such expenses were incurred as a result of patient care. The State then conducts a "desk review" of the submitted costs, and pays the provider a *per diem* rate under an established reimbursement formula. After the contract term is completed, the State reviews the amount paid to the nursing homes by inspecting their records and accounts, which is designated "field work," or an on-site review of the provider's records. Then, the auditors hold an "informal exit conference" with the nursing home provider. At the informal exit conference, the auditors disclose their findings and allow the provider to submit any additional information.

The auditor's "field work" is then subjected to a supervisory review. After the supervisory review, the State issues a draft audit report. Thereafter, the provider has an opportunity to supplement the draft audit report. Lastly, the State issues a final audit report.

The parties do not dispute that the contract terminated in June of 1979, and that the final audit report was not issued until after the expiration of the three year deadline. The pivotal issue is whether the term "audit," and its attendant three year deadline, is satisfied by the completion of an on-site review or whether the term "audit" necessitates the filing of a final audit report.

The State argues that this Court should interpret the contract to define "audit" as a process which includes on-site reviews, but excludes the final audit report. Oakmont, on the other hand, contends that an on-site review was simply a phase of the audit and the audit was not completed until the State issued its final audit report. Although we acknowledge that Oakmont will receive a windfall, we reluctantly decline to interpret the contract as the State urges. To do so would strain well established principles of contract law. Further, the State, which drew the contract, had every opportunity to protect itself by completing the audit process within the time specified in the contract.

Common sense and good faith are the leading touchstones of construction of the provisions of a contract; where one construction makes the provisions unusual or extraordinary and another construction which is equally consistent with the language employed, would make it reasonable, fair and just, the latter construction must prevail. *Farr v. Duke Power Co.*, 265 S. C. 356, 360, 218 S. E. (2d) 431, 434 (1975). In construing terms in contracts, this Court must first look at the language of the contract to determine the intentions of the parties. *Superior Automobile Insurance Co. v. Maners*, 261 S. C. 257, 263, 199 S. E. (2d) 719, 722 (1973).

When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense. *Warner v. Weader*, 280 S. C. 81, 83, 311 S. E. (2d) 78, 79 (1983). Extrinsic evidence giving the contract a different meaning from that indicated by its plain

terms is inadmissible. *Maners,* 199 S. E. (2d) at 722.

Reviewing the language of the contract, we find that the term "audit" as used by the parties in the contract is not ambiguous.[3] The parties themselves defined "audit" to include both the examination of records for authentication and "to adjust, allow, disallow or reject an account of the provider." This definition contemplates the completion of a final audit report, which is the point in time when adjustments, allowances and disallowances are formally revealed to the nursing home provider. An audit is a continuing process; the audit report synthesizes the information gathered during the process by the auditors. If we were to adopt the State's limited definition of audit, then no deadlines would exist for the State to issue a final audit report, and the auditing of nursing home records could drag on for an indeterminable number of years. Moreover, neither the definition of audit nor a reading of the contract as a whole supports the State's argument which restricts "audit" to field work or an on-site examination. As in this case, where the parties define the words or terms which they propose using, the contract will be interpreted according to such definition if free from ambiguity. *Standard Oil Co. v. Powell Paving & Contracting Co.,* 139 S. C. 411, 138 S. E. 184 (1927).

We are without authority to alter a contract by construction or to make new contracts for the parties. *Gilstrap v. Culpepper,* 283 S. C. 83, 320, S. E. (2d) 445 (1984). Our duty is limited to the interpretation of the contract made by the parties themselves ". . . regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully." 320 S. E. (2d) at 447. Because the contract provides that audits, which we interpret to include audit reports, must be completed within three years from the termination of the contract, and since the audit report was not submitted to Oakmont until after the three

---

[3] Having found the term audit unambiguous, we refuse to consider any extrinsic evidence. The Hearing Panel and the trial court erroneously considered extrinsic evidence after concluding that the contract was unambiguous. Extrinsic evidence may only be considered if the contract is found to be ambiguous. *Williams v. Teran, Inc.,* 266 S. C. 55, 221 S. E. (2d) 526 (1976).

years expired, we hold that the State is not entitled to recoup the funds disallowed in its final audit report.

The Court of Appeals' decision reversing the Circuit Court and remanding for entry of judgment in favor of C.A.N. Enterprises, d/b/a Oakmont Nursing Centers (North, East and West) is

Affirmed in result.

GREGORY, C. J. and HARWELL, CHANDLER and FINNEY, JJ., concur.