2030

AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, Respondent v. L.C. FREDERICK and Frederick and Associates, Inc., Appellants.

(431 S.E. (2d) 636)

Court of Appeals

*William T. Toal*, Columbia, *for appellants.*

*Charles R. Norris*, Columbia, *for respondent.*

Heard May 12, 1993.

Decided June 7, 1993.

SHAW, Judge:

Respondent, American Bankers Life Assurance Company of Florida, hereinafter American Bankers, brought this action against appellants, L.C. Frederick and Frederick and Associates, Inc., hereinafter Frederick, seeking an accounting, an injunction and damages for breach of contract and breach of fiduciary duty. The case was referred to a master-in-equity who, with the concurrence of American Bankers, struck the causes of action for an accounting and an injunction. Following a hearing on the matter, the master found Frederick breached a contractual and fiduciary duty and awarded American Bankers damages in the sum of $55,131.60. Frederick appeals. We reverse.

Frederick, a licensed insurance agent and president of L.C. Frederick and Associates, entered an agreement with American Bankers whereby Frederick agreed to sell American Bankers' insurance products to state employees through a payroll deduction plan. The Comptroller General would deduct premiums of participating state employees through

Frederick's state slot number and remit the premiums to Frederick who would then remit the premiums to American Bankers and, in turn, receive a commission on those premiums. Frederick had represented American Bankers for approximately 20 years before American Bankers terminated their agreement in May of 1990. At the time the contract was terminated, 95% to 98% of Frederick's business was with American Bankers. Consequently, Frederick and his 31 subagents had virtually no business left.[1]

American Bankers filed suit against Frederick alleging, amount other things, that Frederick breached contractual and fiduciary duties by encouraging American Bankers' policyholders to transfer coverage to other insurance companies. Following a hearing, the master found that Frederick and his subagents did encourage and induce a majority of American Bankers' policyholders to leave American Bankers for another insurer and that this action was a direct breach of § 13(E) of the contract, and also a breach of Frederick's fiduciary duty to American Bankers. He found American Bankers would have received premiums of $55,131.60 from policyholders had Frederick not encouraged these policyholders to switch insurance companies.

On appeal, Frederick contends the master erred in finding American Bankers was entitled to the damages awarded for breach of § 13(E) of the contract and in finding Frederick breached a fiduciary duty owed to American Bankers. He asserts the clear unambiguous language of the agreement, which was prepared by American Bankers, provided the only penalty for encouraging policyholders to switch to another insurer was forfeiture of any renewal commissions.[2] We agree.

[1] Although the contract between the parties referred to those agents as Frederick's subagents, it also referred to them as American Bankers' agents. Further, the record shows Frederick had no authority to hire or fire an agent but could only make a recommendation. Neither did he have authority to determine an agent's commission. Although Frederick raises the issue of agency on appeal, we need not address this question as we reverse on other grounds.

[2] American Bankers asserts the issue of the exclusivity of remedy under the contract was not raised below and, thus, not preserved for appellate review. However, the record reveals this issue was raised by Frederick during cross-examination of American Bankers' witness at which point the master interrupted stating the contract speaks for itself and any interpretation would be repetitive. In addition, Frederick raised the issue in his trial brief that was submitted to the master. Further, the master clearly based his ruling on interpretation of § 13(E) of the contract.

§ 13(E) of the contract provides as follows:

> Our liability to pay commissions under this Agreement is expressly conditional on your continuing cooperation with our objective to conserve our policies and Agency force. This Agreement will be automatically terminated and no further commissions will be payable if, at any time, you attempt to induce our Agents to leave the Company or our Policyholders to:
> (i) Lapse or surrender our policies, or
> (ii) Borrow against their cash values in order to purchase the product of another company.
> You agree that this condition shall also apply to your activities after this Agreement is terminated.

Particularly noteworthy is that the contract contains no provision prohibiting Frederick or the subagents from selling any other insurance company's products to American Bankers' policyholders after termination of the agreement. The contract contains no noncompetition clause and there is no evidence of any separate noncompetition agreement. Had American Bankers wished Frederick to be bound by such a prohibition, it could have easily provided so in the contract by specifically stating that such action was a breach of the contract subjecting Frederick to damages. It could also have included a noncompetition clause or entered into a separate noncompetition agreement with Frederick. However, it only provided that Frederick faced the forfeiture of commissions if he attempted to persuade the policyholders to lapse or surrender their policies or borrow against their cash values in order to purchase the product of another company. Thus, not only did American Bankers fail to designate such action as a breach of contract, but also permitted the action giving Frederick the choice to either sell a competing product to the policyholders, and thereby forfeit his commissions, or retain his commissions.

The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties and in determining that intention, we must look to the language of the contract. If the language is clear and unambiguous, the language alone determines the contract's force and effect. *United Dominion Realty Trust, Inc. v. Wal-Mart Stores,*

*Inc.,* 307 S.C. 102, 413 S.E. (2d) 866 (Ct. App. 1992). When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense. *C.A.N. Enterprises, Inc. v. South Carolina Health and Human Services Finance Commission,* 296 S.C. 373, 373 S.E. (2d) 584 (1988). The duty of this Court is limited to the interpretation of the contract made by the parties, regardless of its wisdom or folly, apparent unreasonableness, or failure of the parties to guard their rights carefully. We are without authority to alter a contract by construction or make a new contract for the parties. *Id.*

Here the language of the contract between Frederick and American Bankers is clear and unambiguous. It plainly conditions the payment of commissions upon Frederick refraining from inducing the policyholders to lapse or surrender their policies or borrow against their cash values to purchase the product of another company. Had American Bankers wished to absolutely prohibit this conduct under the contract, it should have so provided. Accordingly, we find the master erred in awarding American Bankers damages for breach of § 13(E) of the contract.

We further find no breach of fiduciary duties to American Bankers. It is difficult to discern how a breach of a fiduciary duty can occur where a contract, upon which the fiduciary duty is based, specifically allows for the action now alleged to be a breach of fiduciary duty. There is no evidence that Frederick took any action while a fiduciary relationship was in effect that amounted to a breach of a fiduciary duty. Conversely, the record clearly shows that the relationship between these parties was broken by American Bankers. Once the agreement was terminated, 95 to 98 percent of Frederick's business was lost. It is inconceivable that American Bankers would expect Frederick to sit back and lose virtually all of his business and not take steps to sell for another insurance company by use of his state slot number. This is not a case where Frederick terminated the relationship in anticipation of taking American Bankers' customers away from them and selling them policies from another insurance company. There is simply no evidence of any intentional action on Frederick's part other than procuring business in order to make a

living following American Bankers' termination of their agreement. It is difficult to see how Frederick owes American Bankers a fiduciary duty which essentially deprives Frederick of the right to make a living in his chosen vocation. Surely Frederick, being the one in possession of the state slot number, could not be expected to forego selling to state employees, many of whom Frederick has sold American Bankers' products to in the past.

For the foregoing reasons, the order below is reversed.

Reversed.

CURETON and GOOLSBY, JJ., concur.

GOOLSBY, Judge concurring:

I agree with the majority's opinion only to the extent that it holds the remedy for forfeiture of commissions provided in § 13(E) of the contract is an exclusive remedy. Frederick and Frederick and Associates violated this provision and, as a consequence, American Bankers no longer is obligated to pay them commissions. I therefore see no need to discuss the question of the sufficiency of the evidence to support the trial judge's holding that a fiduciary relationship existed between the parties.