**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1283**

_____

PEACOCK AUTOMOTIVE, LLC,

          Plaintiff - Appellant,

    v.

GRANITE STATE INSURANCE COMPANY,

          Defendant - Appellee.

_____

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Bruce H. Hendricks, District Judge.  (9:20-cv-01303-BHH)

_____

Submitted:  October 10, 2023                  Decided:  February 16, 2024

_____

Before GREGORY and AGEE, Circuit Judges, and Robert S. BALLOU, United States District Judge for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Agee and Judge Ballou joined.

_____

**ON BRIEF:**  Bradford N. Martin, Laura W.H. Teer, BRADFORD NEAL MARTIN & ASSOCIATES, PA, Greenville, South Carolina, for Appellant.  C. Mitchell Brown, Blake T. Williams, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina; J.C. Nicholson, III, COLLINS AND LACY, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This case arises from an insurance dispute for business income losses allegedly sustained by Peacock Automotive LLC ("Peacock") as a result of the mandatory evacuation of certain South Carolina counties due to an incoming hurricane. The district court denied Peacock's motion for partial summary judgment and granted summary judgment to defendant Granite State Insurance Company ("Granite"). Peacock appealed. Finding no error by the district court, we affirm.

## I.

Peacock, a Florida limited liability company, operates several businesses in Jasper County, South Carolina. To insure its commercial properties, Peacock purchased an insurance policy ("the Policy") from Appellee Granite. That policy had a coverage period of January 1, 2019, to January 1, 2020. The policy provision relevant to this case (the "Civil Authority Provision") provided:

> We shall pay for the actual loss of your business income and extra expense caused by or resulting from action by a civil authority that prohibits access to the premises described in the Declarations *due to direct physical loss of or damage to property*, other than at the premises described in the Declarations, caused by or resulting from a covered cause of loss.

J.A. 32 (emphasis added).

On August 22, 2019, Hurricane Dorian began forming in the Atlantic Ocean. South Carolina Governor Henry McMaster issued several executive orders in anticipation of Dorian's impact. The first two orders declared a state of emergency and permitted the governor to activate the South Carolina Emergency Operation Plan to protect citizens

against Dorian's effects.  On September 1, 2019, Governor McMaster issued three more executive orders, including Executive Order No. 2019-28.  That order, relevant to this case, mandated the evacuation of several coastal counties, including Jasper County, effective at noon the following day.  The Executive Order explained that the severity of the hurricane "represent[ed] a significant *threat* to the State of South Carolina" and thus "require[d] the State to take timely *precautions* to protect and preserve property, critical infrastructure, communities, and the general safety and welfare of the people of this State."  J.A. 128 (emphasis added).  Notably, the Executive Order referenced no existing property damage caused by Dorian as a basis for the directive.

Peacock sought to comply with the Order and shut down business operations on September 2.  Three days later, Peacock filed a claim under the Policy for "Business Interruption loss due to the passing of Hurricane Dorian" at several of its locations.  On October 1, 2019, a third-party claims administrator for Granite informed Peacock that it was investigating the matter while reserving its rights not to pay the claim, depending on the outcome of the investigation.  In that reservation letter, the administrator explained that the insurer had concerns that some of the damages claimed might have resulted from non-covered or excluded causes of loss.  The letter explained that the administrator would conduct a review of all claimed damages and evaluate Peacock's eligibility for coverage under the policy, including under the policy's Civil Authority Provision.

The third-party administrator officially denied Peacock's claim on December 9, 2019.  According to the denial letter, the administrator determined that since Peacock did not sustain damage at any of its covered locations, its closure was not covered under the

3

policy. The correspondence further explained that "the evacuation order pre-ceded the storm and states . . . for evacuation due to the 'potential impact of Hurricane Dorian.'" Granite therefore determined that "the evacuation was not declared due to direct physical loss or damage to any property, but in anticipation of the storm to protect the residents of the county." J.A. 140.

On January 30, 2020, Peacock's counsel—seemingly unaware of the denial letter—responded to the reservation letter, demanding coverage under the Policy. In that correspondence, Peacock asserted that the evacuation order "was made as a result of the severe property loss evidenced in the Bahamas as Hurricane Dorian continued to threaten the east coast of the United States." J.A. 143. Peacock attached a letter from Kim Stenson, Director of the South Carolina Emergency Management Division. In that letter, Stenson explained that the governor's evacuation order was issued because of the "severe property loss evidenced in the Bahamas . . .[,] the significant potential threat to South Carolina, and based on the recommendations of local, state and federal officials[.]" J.A. 144. The Stenson letter was dated 127 days after Governor McMaster issued his order and almost a month after Granite denied Peacock's claim.

When Peacock did not receive a satisfactory response, it filed a state court action on March 4, 2020. In its complaint, Peacock alleged that Granite breached the Policy by refusing to cover business income losses sustained due to the evacuation order. Peacock asserted that the order was based on a significant threat of property damage in Jasper County and maintained that Granite acted in bad faith when it refused to pay Peacock's claim. Granite removed the action to the U.S. District Court for the District of South

4

Carolina based on diversity jurisdiction. After the parties engaged in discovery, Peacock filed a motion for partial summary judgment and Granite filed a cross-motion for summary judgment on both of Peacock's claims.

The district court denied Peacock's motion but granted Granite's motion in its entirety. According to the district court, there was no coverage under the Civil Authority Provision because the Executive Order was not issued "due to" the property damage in the Bahamas. The district court explained that, to trigger the Policy, an evacuation order must be issued "because of" damage to property adjacent or within a certain proximity to covered premises. J.A. 340–43. Since the Executive Order did not "mention earlier property loss or damage in the Bahamas" as a basis for its issuance, it did not trigger coverage. Further, the court dismissed Peacock's bad faith claim, finding that Granite did not have the Stenson letter when it denied Peacock's claim and Peacock sued less than a month after providing that letter to Granite. After the district court denied Peacock's motion to amend or alter the judgment, filed under Federal Rule of Civil Procedure 59(e), Peacock timely appealed.

## II.

Peacock contends that the district court erroneously granted Granite summary judgment on the breach of contract and bad faith claims. This Court reviews a district court's grant or denial of summary judgment de novo, "viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party." *Woollard v. Gallagher*, 712 F.3d 865, 873 (4th Cir. 2013). Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

5

judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the record, so viewed, gives rise to genuine factual disputes . . . then those questions must be resolved by a jury, not on summary judgment." *Dean v. Jones*, 984 F.3d 295, 301–302 (4th Cir. 2021).

### III.

We first address the district court's disposal of Peacock's breach of contract claim. As an initial matter, the parties agree that South Carolina law applies to this diversity action. Under South Carolina law, "[i]nsurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). "An insurance contract is read as a whole document so that one may not, by pointing out a single sentence or clause, create an ambiguity." *Id*. (internal quotation marks omitted). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." *C.A.N. Enters., Inc. v. S.C. Health & Hum. Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988).

Ambiguities are resolved in favor of the insured, however. *Greenville County v. Ins. Rsrv. Fund*, 443 S.E.2d 552, 553 (S.C. 1994) ("Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." (internal quotation marks omitted)). "That different courts

6

have construed the language of an insurance policy differently is some indication of ambiguity." *Id*.

The insured bears the burden of establishing that a claim is covered under the contract, *see Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968), and the burden is on the insurer to establish an exclusion to coverage, *Boggs v. Aetna Cas. & Sur. Co.*, 252 S.E.2d 565, 568 (S.C. 1979). "Where a motion for summary judgment presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous." *Moss v. Porter Bros., Inc.*, 357 S.E.2d 25, 27 (S.C. Ct. App. 1987).

In this case, for coverage to be available under the plain language of the Policy's Civil Authority Provision, the action of the civil authority prohibiting access to the insured premises had to be "due to direct physical loss or damage to property, other than at the premises described in the Declarations, caused by or resulting from a covered cause of loss." J.A. 32. We find—as did the district court—that the Policy's language requires a causal link or nexus between the applicable civil authority order and the physical loss of or damage sustained to other property.

Because there is little South Carolina case law addressing civil authority provisions, we rely upon the wisdom of nonbinding authorities to ascertain the law. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 539 (4th Cir. 2017) (recognizing that, in the absence of "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose," a court may "look to a consensus of cases of persuasive authority from other jurisdictions, if such exists" (cleaned up)).

7

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Insurance Co.* is almost exactly on point. 440 F. Supp.3d 520 (D.S.C. 2020). There, a South Carolina law firm temporarily closed in response to Governor McMaster's executive order mandating evacuation of certain coastal areas in anticipation of Hurricane Florence. When the dust settled, the firm sought coverage under a civil authority provision of a business interruption insurance policy. *Id*. at 523–24. After the insurer denied the claim, the firm sued for breach of contract and bad faith refusal to pay. The court sided with the insurer. The policy's requirement that the business interruption occur "*because of* damage or destruction of property adjacent to the described premises" unambiguously required the civil authority order have a connection, link, or nexus to existing damage or destruction of adjacent property when issued. *Id*. at 526 (emphasis added). Because the plaintiff's pause in business was due to an order in anticipation of, rather than in response to, hurricane damage, the resulting business losses were not covered by the policy. *Id*. at 531.

As it is here. Governor McMaster's Executive Order in anticipation of Dorian was similarly precautionary. Further, Peacock Auto's resulting closure was done in compliance with this civil mandate rather than in response to damages or orders issued in response to damages.

In *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011), the Fifth Circuit affirmed the district court's denial of coverage after similarly finding no causal link between an executive order and damage to property. *Id.* at 686–87. Operators of several New Orleans restaurants brought an action against their insurer, seeking business income losses under a virtually identical civil authority provision because of the New

Orleans Mayor's order evacuating the city in light of approaching Hurricane Gustav. *Id.* at 684–85. The restaurant operators argued that "the damage Hurricane Gustav caused in the Caribbean qualified as 'damage to property, other than at the described premises' and therefore was sufficient to trigger coverage." *Id.* at 685. Although, unlike Peacock's Policy, Dickie Brennan's policy did not contain a geographical limitation, the Fifth Circuit still found that prior damage in the Caribbean was not a basis for coverage because the "policy requires a causal link between the prior damage and the civil authority action." *Id.* at 687. The Fifth Circuit further noted that:

> The [Mayor's evacuation] order does not mention the earlier property damage in the Caribbean. It lists possible future storm surge, high winds, and flooding based on Gustav's predicted path as reasons for evacuation. Additionally, both sides agree that there had been no damage to property in Louisiana when the order was issued. Nothing in the record, including the order itself, shows that the issuance of the order was "due to" physical damage to property, either distant property in the Caribbean or property in Louisiana.

*Id.* at 685–86 (emphasis added). The court was "therefore persuaded that [Plaintiffs] failed to demonstrate a nexus between any prior property damage and the evacuation order." *Id.* at 686; *see also United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128, 134–35 (2d Cir. 2006) (denial of coverage to airline when civil authority order halted flights due to 9/11 terrorist attacks; concluding airport was not shut down "as a direct result of damage to" the Pentagon); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-cv-3154, 2004 WL 5704715 at *7–8 (N.D. Ga. Dec. 15, 2004) (finding phrase "direct result," as used in the policy, was unambiguous and further finding plaintiff was unable to establish that the order of civil authority was issued as a result of the 9/11 attacks); *Del. Valley Mgmt., LLC v.*

9

*Cont'l Cas. Co.*, 572 F. Supp. 3d 119, 132–34 (E.D. Pa. 2021) (holding that closure orders issued to prevent loss, but not issued as a result of property damage or loss to nearby property, were not intended to be covered by insurance policy).

These decisions unmistakably require a *direct* nexus between a particular civil authority order and existing property damage that has a causal relationship to the required evacuation. As such, the district court did not err when it determined, based on the clear language of the Civil Authority Provision, that the Policy did not provide coverage for loss created by a civil authority order requiring evacuation unless there was some nexus between the reason for the order and the covered property. And since the evacuation order did not reference the earlier property damage in the Bahamas (or anywhere else, for that matter), and the record contained no other evidence contemporaneous to the Governor's decision that would indicate that property damage in the Bahamas was a basis for issuing the Order, the court correctly found that the Executive Order was issued prophylactically to an entire geographic area. Thus, as the district court correctly reasoned, Peacock failed to demonstrate the required nexus between prior property damage and the Executive Order.

Had Peacock provided the district court with evidence creating a dispute regarding whether the Governor issued the Executive Order because of property damage caused by Dorian in the Bahamas, the district court may have come to a different conclusion. Peacock says they did offer such evidence, in the form of the Stenson letter. But that letter was inadmissible at summary judgment. It was inadmissible hearsay that did not fall into any of the hearsay exceptions, *see* Fed. R. Evid. 803(8)(A)(i)–(iii); was prepared long after the Executive Order was issued and may have even been prepared in contemplation of

10

litigation, as it appears to have been requested by Granite's counsel; and Stenson may not be competent to testify to Governor McMaster's rationale for issuing the Executive Order. *See, e.g.*, S.C. Code § 25-1-440 (providing that "[t]he Governor, when an emergency has been declared, as the elected Chief Executive of the State, is responsible for the safety, security, and welfare of the State").

But even if Stenson could represent the Governor or independently issue an evacuation order, he did not purport to do so. Instead, as his letter states, "*Governor McMaster* determined that it was necessary to evacuate portions of eight coastal counties, including Jasper County, on September 2nd." J.A. 144 (emphasis added). As Director of the Emergency Management Division of the Office of the Adjutant General, Stenson may possess the authority to order evacuation. His office, the South Carolina Emergency Management Division, certainly advised the governor. However, the text of the evacuation order speaks for itself, and it offers nothing to indicate that damage in the Bahamas or any other location was a factor in the Governor's decision. *See Nixon v. United States*, 506 U.S. 224, 232 (1993) (noting a "well-established rule that the plain language of the enacted text is the best indicator of intent").

Peacock looks to a Georgia Court of Appeals decision to support admission of the Stenson letter. In *Assurance Co. of America v. BBB Service Co., Inc.*, 593 S.E.2d 7 (Ga. Ct. App. 2003), an appellate court found that the trial court did not plainly err by using testimony from a group charged with weather-related emergency decision-making in examining the rationale behind an evacuation order. But in contrast to the group in *Assurance*, Stenson was not the evacuation order decisionmaker. Governor McMaster was, and his intent is reflected

11

in the Executive Order. As such, the court was right not to consider the Stenson letter when determining whether a genuine dispute of material fact exists.

IV.

Finally, Peacock asserts that the district court erroneously granted Granite summary judgment on its bad faith claim. To demonstrate bad faith, the insured has the burden to prove all elements of the claim. Those are: (1) the existence of a mutually binding insurance contract between the parties; (2) the insurer's refusal to pay benefits due under that contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E.2d 393, 396–97 (1992). "If there is a reasonable ground for contesting a claim, there is no bad faith." *Id*. at 397; *see also Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 493 (4th Cir. 2005).

For the reasons explained above, Peacock's losses are not covered under the plain terms of the policy. Thus, we cannot conclude that Granite's denial of coverage was reached without objective basis in fact. *See State Farm Fire & Cas. Ins. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990) (applying South Carolina law and noting that the determination of bad faith is whether there was an objectively reasonable basis for denying the insured's claim, which depends on the circumstances existing at the time of the denial). Further, this Court cannot fault Granite for failing to analyze the issues surrounding Hurricane Dorian's damage in the Bahamas because Granite's adjuster denied Peacock's

claim before the Stenson letter was ever received. Because Granite had a reasonable ground to deny coverage based on the express terms of the Policy, we find no error in the district court's assessment that Granite did not act in bad faith.

V.

In sum, we affirm the district court's grant of summary judgment to Granite on the breach of contract and bad faith claims, and affirm the district court's denial of summary judgment to Peacock on the same.

*AFFIRMED*

13